***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before former Deputy Commissioner Pfeiffer. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner DeLuca with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. The employee's average weekly wage was to be determined by Form 22. This calculation yielded an average weekly wage of $663.59 and a compensation rate of $442.41.
5. Stipulated documents include plaintiff's medical records, the parties' discovery responses and documents attached thereto, plaintiff's employment and personnel records, Industrial Commission forms, and plaintiff's recorded statement.
6. Issues presented for determination include whether plaintiff suffered a compensable knee injury on March 8, 2002, and if so, to what benefits he is entitled under the Workers' Compensation Act.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 54 years old. Plaintiff has a high school education.
2. Plaintiff was employed at Elite Trucking as a truck driver. Plaintiff's job responsibilities, along with driving, included washing the truck. The employer had a wash rack to assist with the washing of the trucks.
3. Plaintiff sought treatment on February 19, 2002, at Swansboro Medical Center for what he described as a "locking sensation" in his knee when he walked and pain when he got up and down. Plaintiff told the physician's assistant who treated him that his knee pain had worsened over the past six months. At the time, plaintiff had full range of motion in the knee. He was not taken out of work or referred elsewhere for further evaluation at that time. He was given some samples of Celebrex and told to return in two weeks.
4. On March 8, 2002, plaintiff had completed his driving duties. He moved the truck to the wash rack to wash it. Plaintiff stood on the platform on the back of the chassis in order to wash the back and the top of the cab. He washed the cab with soap and water using brushes that had extended handles. Plaintiff started to get the sprayer to rinse the soap off. Plaintiff testified credibly, and it is found as a fact that, as he stepped down he slipped on the top of the fuel tank. As he slipped, Plaintiff attempted to catch himself and he twisted his left knee trying to reach for a handle. Plaintiff fell about two to three feet to the bottom step. At that time, plaintiff felt a sharp pain and burning in his left knee.
5. Since it was after 5:00 p.m. on that Friday, plaintiff did not check to see if anyone was in the office. Plaintiff went home, rested, and put ice on his knee over the weekend.
6. On Sunday, March 10, plaintiff's knee was so painful, that his wife took him to East Carolina Internal Medicine, (ECIM). When he arrived, plaintiff informed them that he was injured at work and the receptionist requested a form from plaintiff's employer. Since he did not have this form, he gave them his information and intended to pay cash or file it under his regular health insurance. The person who usually handled the insurance claims was not available that day. The receptionist asked Mrs. Carroway to call back the next day.
7. Plaintiff treated with Dr. Raymond Wase, complaining of pain in his knee. Dr. Wase took x-rays of Plaintiff's knee and gave him a knee immobilizer. Dr. Wase diagnosed plaintiff as having a left knee sprain and referred him to Carteret Surgical Orthopedic to rule out a meniscus tear. Dr. Wase wrote plaintiff out of work until his appointment with Dr. Zettl on Wednesday. The next day, plaintiff's wife called ECIM and informed them that it was to be filed as a Workers' Compensation claim.
8. Plaintiff went into work on March 11, 2002 and informed Sandy Pinkston that he had been injured on Friday while washing the truck.
9. On Wednesday, March 13, 2002, plaintiff saw Dr. Zettl. Upon examination, Dr. Zettl noted that plaintiff did not have full range of motion of his left knee and his left knee locked. After the physical examination and review of the x-rays, Dr. Zettl determined that plaintiff would need arthroscopic surgery.
10. On March 20, 2002, Dr. Zettl performed arthroscopic surgery, removing cartilage fragments from plaintiff's left knee.
11. Dr. Zettl kept plaintiff completely out of work and scheduled him for physical therapy. Dr. Zettl would not allow plaintiff to return to his job of driving a truck as even getting in and out of the truck could aggravate plaintiff's knee.
12. Dr. Zettl determined that plaintiff reached maximum medical improvement and that he has a Permanent Partial Disability rating of 17% (seventeen percent) to his lower left leg. Plaintiff was also kept on permanent restrictions of limited climbing, squatting, kneeling and crawling. Plaintiff may have difficulty with prolonged standing and walking.
13. Plaintiff has been unable to find work within his restrictions, but has continued to search for work within his restrictions.
14. Plaintiff's testimony regarding the fact that he slipped while washing the truck when the accident occurred is un-contradicted and is credible.
15. Plaintiff's slip and fall while washing the truck on March 8, 2002, aggravated his pre-existing left knee condition.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident within the course and scope of his employment with the defendant-employer on March 8, 2002. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has been unable to earn wages due to the compensable injury. Therefore, plaintiff is entitled to temporary total disability benefits in the amount of $442.41 per week from March 9, 2002, until he returns to work at the same or greater average weekly wage, or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Defendants are entitled to a credit pursuant to N.C. Gen. Stat. §97-42.1 for any weeks during which Plaintiff received Unemployment Insurance Benefits.
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. There was a legitimate question as to whether Plaintiff's slip and fall on March 8, 2002, aggravated his pre-existing knee condition. Therefore, there is no basis for awarding an attorney fee to Plaintiff under N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney fee hereinafter approved, Plaintiff is entitled to temporary total disability benefits in the amount of $442.41 per week from March 9, 2002, until he returns to work at the same or greater average weekly wage, or until further order of the Industrial Commission subject to the attorney's fee approved herein.
2. Defendants are entitled to a credit pursuant to N.C. Gen. Stat. §97-42.1 for any weeks during which Plaintiff received Unemployment Insurance Benefits.
3. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability
4. A reasonable attorney's fee of twenty five percent (25%) of the compensation due Plaintiff under Paragraph 1 of this AWARD is approved for Plaintiff's counsel.
5. Defendants shall pay costs.
This the ___ day of January, 2005.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER